**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NASRIN AKHTAR SHEIKH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF THE SUDAN, *et al.*,<br><br>Defendants. | | **Civil Action No. 1:14-cv-02090 (JDB)** |
| CALEB NDEDA CHOGO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF THE SUDAN, *et al.*,<br><br>Defendants. | | **Civil Action No. 1:15-cv-00951 (JDB)** |

**PLAINTIFFS' MOTION FOR THE COURT'S APPOINTMENT OF SPECIAL MASTERS TO ADMINISTER DAMAGES PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## I. INTRODUCTION

On August 7, 1998, the United States embassies at Nairobi, Kenya and Dar es Salaam, Tanzania were devastated by militant organization *al Qaeda's* suicide bombings that killed hundreds and injured thousands of people ("Embassy Bombings"). Plaintiffs in the above-captioned cases are victims of the Embassy Bombings. Plaintiffs assert claims against the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") (collectively "Iranian Defendants") for their material support of *al Qaeda* and its (then) leader, Osama bin Laden, which caused the wrongful deaths and injuries suffered in the Embassy Bombings. Plaintiffs filed suit herein pursuant to the "terrorism exception" in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, alleging Iran provided "material support or resources" to Osama bin Laden and *al Qaeda*. The FSIA eliminates immunity in cases seeking damages against designated state sponsors of terrorism for, *inter alia*¸ providing "material support or resources" for acts of "extrajudicial killing." 28 U.S.C. 1605(a)(7)(2006).

The Iranian Defendants have never appeared herein.

By this Motion, Plaintiffs now respectfully move the Court for an order for the appointment of special masters in each case to administer proceedings, receive evidence, and prepare proposed findings and recommendations for a determination of damages, including related proposed findings and recommendations as to each plaintiff's standing and specific injuries, pursuant to 28 U.S.C. § 1605A(e), and Federal Rules of Civil Procedure ("FRCP"), Rule 53(a)(1)(B)(i). The Court's appointment of special masters to hear damage claims brought pursuant to the "terrorism exception" in the FSIA, 28 U.S.C. §§ 1602-11, is expressly authorized by 28 U.S.C. § 1605A(e)(1). Moreover, an "exceptional condition" exists for the Court's appointment of several special masters to "make or recommend findings of fact on issues to be decided without a jury", within the meaning of FRCP Rule 53(a)(1)(B)(i), because the appointment of special masters will assist the Court with rendering a valid final judgment in these cases by their efficient and expeditious undertaking of proceedings to make proposed findings and recommendations regarding damages and related issues for all 63 plaintiffs herein.

Plaintiffs propose eight individuals with exceptional experience and no conflicts of interest for the special master appointments described herein. The proposed order of appointment conforms to all of the requirements of FRCP Rule 53. Accordingly, Plaintiffs respectfully request that the Court grant their Motion.

## II. CASE-RELATED HISTORY

### A. The 1998 U.S. Embassy Bombing Attacks

On August 7, 1998, the United States embassies at Nairobi, Kenya and Dar es Salaam, Tanzania were devastated by militant organization *al Qaeda's* suicide bombings that killed hundreds and injured thousands of people. Among the victims were United States citizens and persons who were working for the United States government. The date of these terrorism attacks marked the eighth anniversary of the arrival of United States troops in Saudi Arabia during the early stages of the Persian Gulf War.

/ / /

**1. The *Sheikh* Action**

On December 11, 2014, Plaintiffs in *Sheikh v. Republic of the Sudan*, who were injured by the Nairobi Embassy bombing, filed the present case against the Defendants under 28 U.S.C. § 1605A. (*Sheikh* ECF 1). The *Sheikh* Plaintiffs are Nasrin Akhtar Sheikh (Decedent Fahrat Mahmood Sheikh's spouse), Farin Akhtar Safeer (Decedent's daughter), Faraz Akhtar Sheikh (Decedent's son), Faizan Akhtar Sheikh (Decedent's son), and the Estate of Farhat Mahmood Sheikh. The Decedent worked for the United States government at the time of the Nairobi bombing. (*Sheikh* ECF 1, ¶ 9). The *Sheikh* Plaintiffs' complaint against the Iranian Defendants asserts claims including wrongful death, loss of consortium, intentional infliction of emotional distress (solatium), and civil conspiracy. (*Id.*, ¶¶ 9-22, 24-29, 70-85). The case was assigned to the Honorable John D. Bates on December 12, 2014. The *Sheikh* Plaintiffs are represented by the undersigned counsel.

**2. The *Chogo* Action**

The *Chogo* Plaintiffs, who include forty-one employee or contractor victims of the Nairobi bombing attack and ten family member victims, as well as seven employee or contractor victims of the Dar es Salaam Embassy bombing, filed their complaint on June 19, 2015. (*Chogo* ECF 1). The *Chogo* Plaintiffs allege similar claims against the Iranian Defendants for assault and battery, emotional distress, aiding and abetting terrorism, and civil conspiracy. (*Id.*, ¶¶ 9-66, 69-75, 150-168). The *Chogo* Plaintiffs are represented by the undersigned counsel.

**3. The Iranian Defendants Failed to Appear in These Cases.**

The Plaintiffs served the Iranian Defendants. The Iranian Defendants had sixty (60) days to file an answer or responsive pleading, pursuant to 28 U.S.C. § 1608(c)(1). The Iranian Defendants did not file an answer or responsive pleading in the cases. As in the *Owens* cases[1], the Iranian Defendants have never appeared in these cases. The Clerk of the Court entered

[1] *See Owens, et al. v. Republic of Sudan, et al.*, No. 01-2244-JDB, and Related Actions (*Wamai, et al. v. Republic of Sudan, et al.*, No. 08-1349, *Amduso, et al. v. Republic of Sudan, et al.*, No. 08-1361, *Mwila, et al. v. The Islamic Republic of Iran, et al.*, No. 08-1377, *Onsongo, et al. v. Republic of Sudan, et al.*, No. 08-1380, and *Khaliq, et al. v. Republic of Sudan, et al.*, No. 10-0356).

defaults against the Iranian Defendants in October, 2015, in the *Sheikh* case (*Sheikh* ECF 27); and in May, 2017, in the *Chogo* case (*Chogo* ECF 22).

**4. The Sudanese Defendants are not parties to these cases.**

The Sudanese Defendants appeared in these cases. However, the Court dismissed the Sudanese Defendants from the *Sheikh* case in March, 2016. *See Sheikh v. Republic of Sudan*, 172 F.Supp.3d 124, 132 (D.D.C. 2016). The *Chogo* Plaintiffs voluntarily dismissed the Sudanese Defendants from their case on April 25, 2018. (*Chogo* ECF 28). Therefore, the Sudanese Defendants are not parties to these cases.

**5. Current Status**

On May 10, 2019, the United States Court of Appeals for the District of Columbia Circuit issued a *Per Curiam* Judgment, ordering a reversal of judgments of this Court in *Sheikh* and *Chogo*, among others, vacating the dismissals therein of these Plaintiffs' complaints against the Iranian Defendants, and remanding the cases to this Court for further proceedings, in accordance with the Court of Appeals' Opinion. (*See Sheikh, et al. v. Ministry of the Interior of the Republic of Sudan, et al.*, CA Case No. 18-7060[2] (*Sheikh* ECF 38-1); and the Court of Appeals' May 10, 2019, Opinion). On June 18, 2019, the Court of Appeals issued its mandate. (*See Sheikh* ECF 38).

On July 24, 2019, the Court entered a case management order following Plaintiffs' submission of a joint report that, *inter alia*, requires Plaintiffs to file motions for the adoption of an administrative plan and for the appointment of special masters by August 8, 2019. (*Sheikh* ECF 40).

## III. LEGAL AUTHORITY

**A. 28 U.S.C. § 1605A expressly permits the appointment of special masters.**

The Court's appointment of special masters to hear damage claims brought pursuant to the "terrorism exception" in the FSIA, 28 U.S.C. §§ 1602-11, is expressly authorized by 28 U.S.C. § 1605A(e)(1): "The courts of the United States may appoint special masters to hear

[2] Consolidated with the *Chogo* appeal.

damage claims brought under this section." The payment of special masters is governed by 28 U.S.C. § 1605A(e)(2) and 34 U.S.C. § 20106.[3] Specifically, the special masters are to be paid from a fund administered by the Department of Justice. 28 U.S.C. § 1605A(e)(2).

**B. FRCP Rule 53 governs special master appointments.**

Pursuant to FRCP Rule 53(a)(1)(B)(i), a court may appoint a special master to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by … some exceptional condition". A special master "must not have a relationship to the parties, attorneys, action or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification." Fed. R. Civ. P. 53(a)(2).

An order of appointment "must direct the master to proceed with all reasonable diligence and must state: "(A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c); (B) the circumstances, if any, in which the master may communicate ex parte with the court or a party; (C) the nature of the materials to be preserved and filed as the record of the master's activities; (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g)." Fed. R. Civ. P. 53(b)(2).

The Court may issue an order of appointment after "(A) the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455; and (B) if a ground is disclosed, the parties, with the court's approval, waive the disqualification." Fed. R. Civ. P. 53(b)(3).

"A master must report to the court as required by the appointing order. The master must file the report and promptly serve a copy on each party, unless the court orders otherwise." Fed. R. Civ. P. 53(d).

Compensation must be fixed "on the basis and terms stated in the appointing order" (Fed.

[3] Previously 42 U.S.C. § 10603c.

R. Civ. P. 53(g)), and may be paid from a fund or subject matter of the action within the Court's control. Fed. R. Civ. P. 53(g)(2)(B).

## IV. THE COURT SHOULD APPOINT THE PROPOSED SPECIAL MASTERS.

### A. The Court is expressly permitted to appoint special masters in this case and an exceptional condition exists for such appointments.

The Court's appointment of special masters to hear damage claims brought pursuant to the "terrorism exception" in the FSIA, 28 U.S.C. §§ 1602-11, is expressly authorized by 28 U.S.C. § 1605A(e)(1). Moreover, Plaintiffs submit that an "exceptional condition" exists for the Court's appointment of several special masters to "make or recommend findings of fact on issues to be decided without a jury", within the meaning of FRCP Rule 53(a)(1)(B)(i), because the appointment of special masters will assist the Court with rendering a valid final judgment in these cases by their efficient and expeditious undertaking of proceedings to make proposed findings and recommendations as to damages and related issues for all 63 plaintiffs herein. For expediency, Plaintiffs propose the appointment of several special masters and a reasoned allocation of proceedings among them. For example, the wrongful death cases may be assigned to two separate special masters, one to each, and that each special master thereafter be assigned a roughly equal number of physical injury and solatium claims.

### B. The proposed individuals meet the criteria for appointment.

Plaintiffs propose a slate of eight individuals with exceptional experience and no conflicts of interest for the special master appointments described herein, who have agreed to act as special masters herein if appointed by this Court. Their biographies are submitted herewith for the Court's consideration. None of the proposed individuals has "a relationship to the parties, attorneys, action or court that would require disqualification of a judge under 28 U.S.C. § 455." Fed. R. Civ. P. 53(a)(2). They will attest to this pursuant to FRCP Rule 53(b)(3), and to their agreement to abide by the administrative plan within 30 days of the Court's issuance of an order provisionally appointing them to serve as special masters. Continuing appointment shall be conditions upon Plaintiffs' submission of affidavits by the appointees, which also will contain

their agreement to adhere to the Court's order of special master appointment and order approving the Administrative Plan.

**1. Hon. Wayne D. Brazil (Ret.)**

Judge Brazil was a United States Magistrate Judge for the United States District Court, Northern District of California for 25 years (June 1984-October 2009). (**Ex. A**: Brazil Biography) Between 2009 and 2011, Judge Brazil was a full-time law professor at the University of California, Berkeley's Boalt School of Law; he then continued his professorship there on a part-time basis between 2011 and 2014. (*Id.*) He has been appointed to serve as a special master and referee in numerous cases. (*Id.*) Judge Brazil has also authored publications, including on the use of special masters in complex litigation. (*Id.*) Additionally, Judge Brazil has contributed to the revision of the Federal Rules of Civil Procedure and Federal Rules of Evidence through his service on Judicial Conference committees, and review and revision of California's discovery rules through service on a joint commission on the Judicial Council of California and California State Bar. *(Id.*)

**2. Hon. Rosalyn Chapman (Ret.)**

Judge Chapman was a United States Magistrate Judge for the United States District Court, Central District of California, for nearly 16 years (1995-2012), and was recalled to serve in the United States District Courts for the Northern Districts of California and Arizona. (**Ex. B**: Chapman Biography) Prior to her appointment to the federal bench, Judge Chapman served as an administrative law judge for the State of California (1977-1995). (*Id.*) Judge Chapman has served as a special master in numerous cases, including in a civil RICO matter, a class action against the Department of Justice and Department of Homeland Security regarding immigration detention hearings, a Department of Labor wage and hour action, and in a "whistleblower" action regarding Medicare health insurance companies. (*Id.*) Recently, Judge Chapman also served part-time as a Judge on the United Nations Appeals Tribunal (2012-2017). (*Id.*)

**3. Hon. Jay Gandhi (Ret.)**

Judge Gandhi was a United States Magistrate Judge for the United States District Court,

Central District of California, for eight years. (**Ex. C**: Gandhi Biography.) Prior to his appointment to the federal bench, Judge Gandhi was a partner at Paul Hastings LLP (1998-2010), where he spent 12 years litigating high profile commercial cases, mass tort multi-district litigation, and class actions in state and federal courts. (*Id.*) He served for five years as a Vice-Chair and member of the Central District of California's Alternative Dispute Resolution Committee, and is a Former Co-Chair of the Alternative Dispute Resolution Committee of the American Bar Association's Litigation Section. (*Id.*)

**4. Deborah E. Greenspan, Esq.**

Ms. Greenspan was previously appointed by this Court to act as special master in prior, similar proceedings, including in *Amduso v. Republic of Sudan*, United States District Court for the District of Columbia Case No. 08-1361 (JDB). (*Amduso* ECF 67.) Earlier this year, she was appointed to serve as a special master in another similar case, *Frost v. Islamic Republic of Iran*, United States District Court for the District of Columbia Case No. 17-0603 (TJK). (**Ex. I**: *Frost* ECF 53.) She is presently a Partner and Co-Chair of the Energy, Environment and Mass Torts Practice Group at Blank Rome in Washington, D.C. (**Ex. D**: Greenspan Biography.) Her practice focuses on class actions, mass claims, dispute resolution, insurance recovery, and mass tort bankruptcy. She has served as a special master in numerous cases, including as the Deputy Special Master for the September 11th Victim Compensation Fund of 2001, and she was responsible for conceiving the policies and for facilitating the distribution of over $9 billion to victims of the September 11 attacks. In July 2018 she was appointed Special Master in the Flint Water Cases litigation. (*Id.*)

**5. Hon. Ann Kough (Ret.)**

Judge Kough was a judge of the Superior Court of California for the County of Los Angeles for 13 years (1989-2002), and spent her final two years on the bench in the Court's Complex Civil Litigation pilot program responsible for managing, trying and otherwise bringing to resolution complex, multi-party civil cases. (**Ex. E:** Kough Biography.) Prior to her judgeship, Judge Kough was general counsel for a company (1986-1988), and was a partner at Kough &

Katz LLP (1983-1986). (*Id.*) Judge Kough has served as a special master and referee on numerous cases, and is also a member of the Academy of Court-Appointed Masters. (*Id.*)

**6. Hon. Carlos R. Moreno (Ret.)**

Justice Moreno served as a member of the judiciary for 25 years, commencing with 15 years as a trial judge for California state courts (1986-1998) and for the United States District Court for the Central District of California (1998-2001), and concluding his judicial career as an Associate Justice of the California Supreme Court (2001-2011). (**Ex. F:** Moreno Biography.) Prior to Justice Moreno's service as a member of the judiciary, he was a Deputy City Attorney for the City of Los Angeles (1975-1979) and was in private practice at Kelley, Drye & Warren (1979-1986). (*Id.*) More recently, Justice Moreno served as a United States Ambassador to Belize (2014-2017). He is the recipient of numerous awards and accolades. (*Id.*)

**7. Stephen A. Saltzburg, Esq.**

Mr. Saltzburg was previously appointed by this Court to serve as a special master in prior, similar proceedings, including in the *Amduso* case. (*Amduso* ECF 67.) He is presently the Wallace and Beverley Woodbury University Professor of Law at George Washington University, where he has taught trial advocacy since 1990. (**Ex. G**: Saltzburg Biography.) He is also the Director of National Trial Advocacy College at the University of Virginia. (*Id.*) Mr. Saltzburg previously taught at the University of Virginia's School of Law from 1972 through 1990. (*Id.*) Mr. Saltzburg's prior experience includes government service in several capacities, including as a Deputy Assistant Attorney General (Criminal Division) between 1988 and 1999, as stated on his resume. (*Id.*) He has also served as a mediator for the United States Court of Appeals for the District of Columbia from 1992 to present. (*Id.*) In addition to serving as a special master in prior similar proceedings before this Court, Mr. Saltzburg served as a special master in multi-district litigation (MDLs) and class actions, among other cases set forth on his resume. (*Id.*)

Each appointment is conditioned upon the timely submission, within 30 days of this order, of a sworn affidavit by each appointed individual that each individual agrees to adhere to the Court's orders of appointment and administrative plan, and has no disabling conflicts that

might form the basis for disqualification under 28 U.S.C. § 455.

## V. THE PROPOSED ORDER OF APPOINTMENT CONFORMS TO THE REQUIREMENTS OF FRCP, RULE 53.

An order of appointment "must direct the master to proceed with all reasonable diligence and must state: "(A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c); (B) the circumstances, if any, in which the master may communicate ex parte with the court or a party; (C) the nature of the materials to be preserved and filed as the record of the master's activities; (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g)." Fed. R. Civ. P. 53(b)(2). Plaintiffs' proposed order of appointment, together with the proposed Administrative Plan submitted pursuant to Plaintiffs' Motion for Adoption of Administrative Plan, conforms to all of the requirements of FRCP Rule 53. (**Ex. H**: Proposed Order.)

## VI. COMPENSATION

Compensation must be fixed "on the basis and terms stated in the appointing order"(Fed. R. Civ. P. 53(g)), and may be paid from a fund or subject matter of the action within the Court's control (Fed. R. Civ. P. 53(g)(2)(B)). Here, pursuant to the Foreign Sovereign Immunities Act, the special masters are to be compensated "from funds available for the program under section 1404C of the Victims of Crime Act of 1984." 28 U.S.C. § 1605A(e)(2).

Within two weeks of the entry of any damages award in this case, the appointed special masters must provide Plaintiffs' with vouchers itemizing, for each day of work, the amount of time worked, the nature of the work done, and the amount of any business expenses incurred. Such vouchers should also include a calculation of total payment sought. Within two weeks of receiving any such voucher, Plaintiffs shall file a motion with the Court seeking the Court's order that the Clerk coordinate payment with the United States Department of Justice.

Plaintiffs propose that the special masters be paid **<u>$1,200</u>** per day and shall be reimbursed

for all reasonable expenses incurred in the performance of their duties, upon submission of a voucher. Where the special master expends less than a full work day, the voucher shall indicate the portion of the day worked. Where the special master expends less than a full work day but more than one-half (four hours) of a work day, he or she shall be paid **$1,200** for that day. Where the special master expends one-half or less than one-half of a work day, he or she shall be paid **$600** for that day. Additional expenses beyond transportation should not exceed $350 per day. Should any question arise as to expenses, the regulations promulgated by the Internal Revenue Service regarding business expenses shall govern and, subject to the above limitation, all expenses qualifying as business expenses under Treas. Reg. § 1.162-1 shall be paid, including compensation for the "labor" of a legal assistant or associate attorney. This compensation structure was approved earlier this year in a similar case. (**Ex. I**: *Frost* ECF 53.)

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court grant this Motion and enter the requested order of special master appointments for the *Sheikh* and *Chogo* cases.

DATED: August 8, 2019

Respectfully submitted,

By: /s/ Raymond P. Boucher

Raymond P. Boucher (*pro hac vice*)
BOUCHER, LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Tel.: (818) 340-5400
Fax: (818) 340-5401
ray@boucher.la

Daniel S. Ward (DC Bar No. 474339)
WARD & BERRY, P.L.L.C.
2000 Pennsylvania Avenue, NW
Suite 4500
Washington D.C. 20006
Tel.: (202) 331-8160
dan@wardberry.com

Attorneys for *Sheikh and Chogo* Plaintiffs