UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NASRIN AKHTAR SHEIKH, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**REPUBLIC OF THE SUDAN, et al.,**<br><br>Defendants. | Civil Action No. 14-2090 (JDB) |
| **CALEB NDEDA CHOGO, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**REPUBLIC OF THE SUDAN, et al.,**<br><br>Defendants. | Civil Action No. 15-951 (JDB) |

### ORDER

Plaintiffs John Kabi Kibe, George Mimba's relatives,[1] and Farhat Mahmood Sheikh's relatives[2] (together, "Moving Plaintiffs") are 14 foreign-national, immediate family members of three victims who were injured or killed in the 1998 bombing attack of the U.S. Embassy in Nairobi, Kenya.[3]  Consolidated Mot. for Default Js. as to Punitive Damages Claims [Sheikh ECF

---

[1] The Mimba family plaintiffs are Prisca Akumu Mimba, Judith Akinyi Mimba, Christine Awino Ochieng, Fredrick Ouso Mimba, Hezborn Owiro Mimba, Beatrice Akoth Mimba, Zablon Nyamolo Mimba, Edwin Opiyo Mimba, and Erica Achieng Mimba (together, "Mimba Family Plaintiffs").

[2] The Sheikh family plaintiffs are Nasrin Akhtar Sheikh, Farin Akhtar McLaughlin, Faraz Akhtar Sheikh, and Faizan Akhtar Sheikh (together, "Sheikh Family Plaintiffs").

[3] John Kabi Kibe is the son of Francis Kibe Njuguna, who was killed in the bombing attack. R. & R. of Special Master Regarding Pls.' Estate of Francis Kibe Njuguna's & John Kabi Kibe's Claims [Chogo ECF No. 77] at 4.  The Mimba Family Plaintiffs consist of the mother and siblings of George Mimba, who was injured in the bombing attack.  R. & R. of Special Master Deborah Greenspan Regarding Damages Claims Asserted by Mimba Family Pls. [Chogo ECF No. 69] at 7–18.  The Sheikh Family Plaintiffs consist of the spouse and children of Farhat

1

No. 99 & Chogo ECF No. 173][4] ("Consolidated Mot. for Default Js.") at 1–5. The Sheikh Family Plaintiffs, along with another plaintiff, filed suit in 2014 against the Republic of Sudan and the Ministry of the Interior of the Republic of the Sudan (together, "Sudanese Defendants") as well as the Islamic Republic of Iran and the Iranian Ministry of Information and Security (together, "Iranian Defendants") under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, alleging claims under District of Columbia law for wrongful death, loss of consortium, survival, intentional infliction of emotional distress (solatium), aiding and abetting, and civil conspiracy. Compl. [Sheikh ECF No. 1] ¶¶ 9–12, 70–93. Kibe and the Mimba Family Plaintiffs, along with others, filed suit in 2015 against the Sudanese Defendants and the Iranian Defendants under the same FSIA provision, alleging D.C. law claims for wrongful death, assault and battery, intentional infliction of emotional distress (solatium), aiding and abetting, and civil conspiracy. Compl. [Chogo ECF No. 1] ¶¶ 27, 40–48, 148–68. Because Moving Plaintiffs are not U.S. nationals, they had to bring their claims under D.C. law via § 1605A(a)'s sovereign immunity exception for state-sponsored terrorism ("terrorism exception") rather than § 1605A(c)'s federal cause of action, which is available only to U.S. nationals, members of the armed forces, U.S. government employees or contractors, or the legal representatives thereof. See Sheikh v. Republic of Sudan, 485 F. Supp. 3d 255, 265 (D.D.C. 2020).

---

Mahmood Sheikh, who was killed in the bombing attack. R. & R. of Special Master Regarding Estate of Farhat Mahmood Sheikh and Sheikh Family Pls.' Claims [Sheikh ECF No. 66] at 7–14.

The Court previously entered final judgment in favor of Caleb Ndeda Chogo, the named plaintiff in the Chogo action, on his claims against Iran, awarding him compensatory and punitive damages. Aug. 31, 2020 Order [Chogo ECF No. 106] at 1–2.

[4] Citations to an ECF number preceded by "Sheikh" refer to the docket in Case No. 14-cv-2090, and those preceded by "Chogo" refer to Case No. 15-cv-951.

On August 31, 2020, the Court entered default judgments in both cases against the Iranian Defendants[5] on all claims except Moving Plaintiffs' D.C. law claims for punitive damages and awarded all plaintiffs, including Moving Plaintiffs, substantial compensatory damages and prejudgment interest. Sheikh, 485 F. Supp. 3d at 275. On May 20, 2022, Moving Plaintiffs filed the instant consolidated motion for default judgments against the Iranian Defendants as to their punitive damages claims. See Consolidated Mot. for Default Js. For the reasons explained below, the Court will grant the motion.

## Background

The Court assumes familiarity with the facts of these cases as set out in its prior opinions, see Sheikh, 485 F. Supp. 3d at 260–62; Sheikh v. Republic of Sudan, 308 F. Supp. 3d 46, 48–49 (D.D.C. 2018); Sheikh v. Republic of Sudan, 172 F. Supp. 3d 124, 125–27 (D.D.C. 2016), as well as with the broader litigation arising out of the 1998 bombing of the U.S. embassies in Nairobi, Kenya and Dar es Salaam, Tanzania, see, e.g., Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 135–46 (D.D.C. 2011), and will thus include here only those facts necessary to understand the present motion.

On August 7, 1998, al Qaeda terrorists bombed the U.S. embassies in Nairobi and Dar es Salaam, killing hundreds of people and injuring over a thousand. Sheikh, 485 F. Supp. 3d at 260. Victims, their estates, and their family members (including Moving Plaintiffs) filed suits against the Iranian Defendants seeking compensation for these attacks under the terrorism exception to sovereign immunity in the FSIA. They alleged that Iran is liable for compensatory and punitive damages to a number of different plaintiffs for providing material support to al Qaeda to carry out

---

[5] The Sudanese Defendants have been dismissed from both cases. In Sheikh, the Sudanese Defendants moved to dismiss plaintiffs' claims as untimely under the FSIA statute of limitations, and the Court granted that motion. Mem. Op. [Sheikh ECF No. 29] at 1. In Chogo, plaintiffs voluntarily dismissed their claims against the Sudanese Defendants. Notice of Voluntary Dismissal [Chogo ECF No. 28].

3

these attacks. In a series of prior rulings, the Court has agreed and has awarded damages against Iran and its agents for wrongful death, loss of solatium, battery, intentional infliction of emotional distress, and other forms of economic damages arising out of the embassy bombings. See, e.g., Order, Wamai v. Republic of Sudan, No. 08-1349 (JDB) (D.D.C. July 25, 2014), ECF No. 245; Order, Mwila v. Islamic Republic of Iran, No. 08-1377 (JDB) (D.D.C. Mar. 28, 2014), ECF No. 88; Order, Khaliq v. Republic of Sudan, No. 10-356 (JDB) (D.D.C. Mar. 28, 2014), ECF No. 40.

In the present cases, the Court previously entered default judgment against the Iranian Defendants, holding that (1) the Court has subject-matter jurisdiction under the FSIA's terrorism exception and personal jurisdiction over the Iranian Defendants, Sheikh, 485 F. Supp. 3d at 263–64; (2) the Iranian Defendants are liable to Moving Plaintiffs for their injuries arising from the embassy bombing, id. at 264–67; and (3) Moving Plaintiffs are entitled to compensatory damages and prejudgment interest, id. at 267–72, 274–75. At the time of the Court's prior decision, relevant precedent on the punitive damages issue was in flux. Although the D.C. Circuit had held that retroactive punitive damages are not available for FSIA claims brought under state or federal law, Owens v. Republic of Sudan, 864 F.3d 751, 817–18 (D.C. Cir. 2017), the Supreme Court vacated that holding with respect to federal law claimants and remanded the state law issue to the D.C. Circuit for reconsideration in light of that decision, Opati v. Republic of Sudan, 140 S. Ct. 1601, 1610 (2020), vacating and remanding sub nom. Owens, 864 F.3d 751. Accordingly, the Court did not rule on Moving Plaintiffs' claims for punitive damages at that time because it was "loath to weigh in before receiving the D.C. Circuit's guidance." Sheikh, 485 F. Supp. 3d at 273–74. The Court instead entered final judgment as to all claims except Moving Plaintiffs' claims for punitive damages under state law. Id.

The Court ordered Moving Plaintiffs to file a new motion for default judgment on their punitive damages claims within 30 days of the D.C. Circuit's decision. Aug. 31, 2020 Order [Sheikh ECF No. 86] at 2–3; Aug. 31, 2020 Order [Chogo ECF No. 106] at 2–3. Due to a settlement regarding claims against Sudan in Opati after this Court's decision in Sheikh, the appeal was dismissed, Joint Notice of Indicative Rulings & Joint Mot. for Remand & Dismissal ("Dismissal") at 1–2, Opati v. Republic of Sudan, No. 14-7124 (D.C. Cir. Mar. 23, 2022), ECF No. 1940254; Per Curiam Order ("Order") at 1, Opati, No. 14-7124 (D.C. Cir. Apr. 1, 2022), ECF No. 1941574, and thus the D.C. Circuit no longer has occasion to reexamine its prior holding. In light of that development, this Court extended Moving Plaintiffs' deadline to file the present motion to May 2022. Sheikh Apr. 6, 2022 Min. Order; Chogo Apr. 6, 2022 Min. Order.

For the reasons explained below, the Court will grant Moving Plaintiffs' motion for default judgments on their punitive damages claims against Iran.

## Analysis

### I. Retroactive punitive damages are available for D.C. law claims.

Punitive damages "serve to punish and deter the actions for which they [are] awarded." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 87 (D.D.C. 2010). In 2008, Congress amended the FSIA to lift the previous bar on punitive damages in state-sponsored terrorism cases. Opati, 140 S. Ct. at 1606. In Opati, the Supreme Court considered whether the FSIA authorizes punitive damages in cases brought under § 1605A(c)'s federal cause of action for conduct that occurred before the 2008 amendment. Id. at 1607. The D.C. Circuit had previously concluded that "a plaintiff proceeding under either state or federal law cannot recover punitive damages for conduct occurring prior to the [2008] enactment of § 1605A," Owens, 864 F.3d at 818, but the Supreme Court vacated that ruling in May 2020, concluding "that punitive damages are permissible for federal claims" under FSIA § 1605A(c) based on pre-enactment conduct, Opati,

5

140 S. Ct. at 1610.  The Supreme Court did not reach the question whether retroactive punitive damages are available for terrorism cases brought under state law, instead vacating and remanding to the D.C. Circuit to reexamine its prior decision on that issue.  Id. at 1610.  As explained above, the D.C. Circuit has not, and will not, reconsider that holding due to a settlement reached in Opati.  Dismissal at 1–2, Opati, No. 14-7124; Order at 1, Opati, No. 14-7124.

The Supreme Court's opinion in Opati strongly suggests that the logic of the D.C. Circuit's holding that state law claimants cannot recover retroactive punitive damages under § 1605A is incorrect.  See Opati, 140 S. Ct. at 1610.  The Supreme Court "acknowledge[d] one implication that necessarily follow[ed] from [its] holding": "Having now decided that punitive damages are permissible for federal claims, and that the reasons the court of appeals offered for its contrary decision were mistaken, it follows that the court of appeals must also reconsider its decision concerning the availability of punitive damages for claims proceeding under state law."  Id.  The Opati Court noted that the D.C. Circuit held that retroactive punitive damages are not available to state law claimants "for 'the same reason'" it held punitive damages are not available to federal claimants.  Id. (quoting Owens, 864 F.3d at 818).

Because the Supreme Court has since concluded that the "reasons the court of appeals offered for its . . . decision [regarding federal claimants] were mistaken," Opati, 140 S. Ct. at 1610, it logically follows that the D.C. Circuit's ancillary—and now vacated—holding regarding the availability of punitive damages for state law claims premised on those same reasons is also incorrect.  Nothing in the Supreme Court's reasoning in Opati or the D.C. Circuit's reasoning in Owens suggests otherwise.  Moreover, the D.C. Circuit noted in Owens that "a puzzling outcome would arise from" holding that retroactive punitive damages are available to state but not federal claimants, which would "frustrate th[e] intent" of Congress in enacting the 2008 amendment "to

6

end the inconsistencies" of a "patchwork" approach.  Owens, 864 F.3d at 817–18; see also Opati, 140 S. Ct. at 1610 (noting that the D.C. Circuit "stressed that it would be 'puzzling' if punitive damages were permissible for state claims but not federal ones").  The same surely would be true if federal law claimants, but not state law claimants, could be awarded retroactive punitive damages.

Hence, in accordance with the implication of the Supreme Court's opinion in Opati and the D.C. Circuit's concerns regarding inconsistency articulated in Owens, this Court holds that retroactive punitive damages are available to state law claimants for the same reasons they are available to federal law claimants under § 1605A.

**II.     Punitive damages are warranted for Moving Plaintiffs' D.C. law claims.**

Having established that punitive damages are available for Moving Plaintiffs' D.C. law claims, the Court now addresses whether punitive damages are warranted in these cases.  Moving Plaintiffs ask the Court to award them punitive damages in an amount equal to their compensatory damages.  Consolidated Mot. for Default Js. at 11.

Because Moving Plaintiffs bring their substantive claims under D.C. law, D.C. law also governs their claims for punitive damages.  See Est. of Doe v. Islamic Republic of Iran, 943 F. Supp. 2d 180, 191 (D.D.C. 2013) ("D.C. law, which supplies the cause of action, dictates [punitive damages]."); see also Owens, 826 F. Supp. 2d at 157 (applying D.C. law to plaintiffs' claims that did not arise under the federal cause of action found in § 1605A(c)).  Under D.C. law, "[p]unitive damages are warranted only when the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury."  Wash. Med. Ctr., Inc. v. Holle, 573 A.2d 1269, 1284 (D.C. 1990) (internal quotation marks omitted).  "[A] tort of intentional infliction of severe emotional distress, 'if proved, would provide an appropriate basis for an award of punitive

7

damages, since it is by definition willful and outrageous conduct which society finds intolerable, and seeks to deter.'" Est. of Doe, 943 F. Supp. 2d at 191 (quoting Sere v. Grp. Hospitalization, Inc., 443 A.2d 33, 37–38 (D.C. 1982)).

Under D.C. law, an intentional infliction of emotional distress claim is an appropriate basis for punitive damages. Fritz v. Islamic Republic of Iran, 466 F. Supp. 3d 13, 21 (D.D.C. 2020); Sere, 443 A.2d at 37–38. As the Court noted in a previous decision in this case, "[b]ecause acts of terrorism are by their very definition extreme and outrageous conduct, the Court has previously determined that injuries to survivors of such acts are compensable by analogy under the tort of intentional infliction of emotional distress." Sheikh, 485 F. Supp. 3d at 266 (internal quotation marks omitted). The Court previously held that Iran is liable to Moving Plaintiffs for damages resulting from intentional infliction of emotional distress. Id. at 266–67. Hence, under D.C. law, punitive damages are also warranted for Moving Plaintiffs' intentional infliction of emotional distress claims.

Courts have calculated the appropriate amount of punitive damages in FSIA cases by weighing four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 56 (D.D.C. 2012) (quoting Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)). While there are competing views in this District about how to determine the amount of punitive damages to award, compare Est. of Doe, 943 F. Supp. 2d at 189–91 (awarding punitive damages equaling three times the amount of the material support provided by Iran), with Fritz v. Islamic Republic of Iran, 324 F. Supp. 3d 54, 65 (D.D.C. 2018) (awarding punitive damages equal to compensatory damages multiplied by a factor of two), this Court has previously determined in

another FSIA case arising out of the embassy bombing attack that it is "appropriate to award punitive damages in an amount equal to the amount of total compensatory damages," Opati v. Republic of Sudan, 60 F. Supp. 3d 68, 82 (D.D.C. 2014), appeal dismissed and remanded, No. 14-7124, 2022 WL 1003610 (D.C. Cir. Apr. 1, 2022).

The Court previously held that "all factors weigh in favor of awarding significant [punitive] damages" here. Sheikh, 485 F. Supp. 3d at 272–73. The Court noted that "Iran aided al Qaeda in carrying out a horrific attack that killed hundreds of people and injured [over a] thousand more; plaintiffs suffered severe psychological trauma as a result; there is a significant need to deter further such terrorist attacks; and defendant is a sovereign nation that can be presumed to possess significant wealth." Id. at 273. Hence, the Court will award Moving Plaintiffs punitive damages in an amount equal to their total compensatory damages, $41,000,000, which shall be distributed in accordance with the compensatory damages to which each Moving Plaintiff is entitled as described in this Court's August 31, 2020 Order [Sheikh ECF No. 86 & Chogo ECF No. 106].

\* \* \*

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby **ORDERED** that [Sheikh ECF No. 99] [Chogo ECF No. 173] the motions are **GRANTED**, and judgment is entered in favor of Moving Plaintiffs; it is further

**ORDERED** that Moving Plaintiffs are awarded punitive damages in the following amounts:

| Plaintiff | Relationship to Direct Victim | Punitive Damages Awarded |
|---|---|---|
| **Chogo Plaintiffs** | | |
| John Kabi Kibe | Son of Francis Kibe Njuguna | $5,500,000 |
| Prisca Akumu Mimba | Mother of George Mimba | $2,500,000 |
| Judith Akinyi Mimba | Sibling of George Mimba | $1,250,000 |

| | | |
|---|---|---|
| Christine Awino Ochieng | Sibling of George Mimba | $1,250,000 |
| Fredrick Ouso Mimba | Sibling of George Mimba | $1,250,000 |
| Hezborn Owiro Mimba | Sibling of George Mimba | $1,250,000 |
| Beatrice Akoth Mimba | Sibling of George Mimba | $1,250,000 |
| Zablon Nyamolo Mimba | Sibling of George Mimba | $1,250,000 |
| Edwin Opiyo Mimba | Sibling of George Mimba | $1,250,000 |
| Erica Achieng Mimba | Sibling of George Mimba | $1,250,000 |
| **Sheikh Plaintiffs** | | |
| Nasrin Akhtar Sheikh | Wife of Farhat Mahmood Sheikh | $8,000,000 |
| Farin Akhtar McLaughlin | Daughter of Farhat Mahmood Sheikh | $5,000,000 |
| Faraz Akhtar Sheikh | Son of Farhat Mahmood Sheikh | $5,000,000 |
| Faizan Akhtar Sheikh | Son of Farhat Mahmood Sheikh | $5,000,000 |
| | | |
| **Total Punitive Damages Awarded:** | | $41,000,000 |

And it is further **ORDERED** that final judgment is directed under Federal Rule of Civil Procedure 54(b) as to Moving Plaintiffs' punitive damages claims associated with the bombing attack of the U.S. Embassy in Nairobi, Kenya.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: November 9, 2022